STATE OF NORTH CAROLINA v. JOHN LEE EDWARDS

No. 20

(Filed 10 October 1973)

**Criminal Law § 75— involuntary written confession — subsequent oral confession — presumption of involuntariness**

Where the written confession of a retarded eighteen-year-old defendant given on September 25 was involuntary, defendant's oral confession given to the same officers on December 2 after he had spent 63 days in a State Hospital for the purpose of determining his mental competency is likewise presumed to be involuntary in the absence of a showing by the State that defendant was advised before he made the oral confession that the prior written confession was invalid or that it could not be used against him.

THE defendant, John Lee Edwards, was charged by grand jury indictments, proper in form, with having committed two capital felonies: burglary in the first degree and murder in the first degree. The indictments charged: (1) That the defendant on September 5, 1971, in the nighttime, broke into and entered the dwelling house of Mrs. Dora Lloyd for the purpose of committing a designated felony; (2) that the defendant on September 5, 1971, feloniously and of his malice aforethought, killed and murdered Mrs. Lloyd. The murder indictment was drawn in accordance with G.S. 15-144.

The State's evidence disclosed that on the morning of September 5, 1971, a neighbor found the dead body of Mrs. Dora Lloyd in the home where she lived alone. The evidence disclosed she died as a result of strangulation.

The investigating officers interrogated the defendant, a boy eighteen years of age, who lived in the community. When he denied any knowledge of or implication in the offenses and gave an account of his whereabouts and his companions, the officers released him. He was under bond to appear in court to answer a minor infraction of the criminal law and his bondsman surrendered him to the officers who were investigating the death of Mrs. Lloyd. The officers also questioned the persons named by the defendant as his companions on the night of September 4-5. Their accounts differed in some important details from the story told by the defendant. After the bondsman had surrendered the defendant, the officers began an extended interrogation, with no one present except the officers

and the defendant. Finally, the defendant broke down and tearfully admitted he went to the home of Mrs. Lloyd on the night of September 4-5, 1971, for the purpose of stealing money. He entered the house by opening an unlocked door. As he went from one room to another, he overturned a chair. The noise awoke Mrs. Lloyd who began screaming. He then choked her until she stopped screaming, disconnected the telephone, and left. After the admissions thus obtained, the officers wrote out the confession and read it to the defendant who said it was correct.

Although the time was well after midnight, the officers called the district judge who, at their request, appointed Mr. Noell attorney for the defendant and instructed him to meet the officers at the jail in Hillsborough immediately. (On the way the officers obtained from the defendant a promise that he would sign the confession in the presence of counsel.)

At the courthouse in Hillsborough Mr. Noell conferred briefly with the defendant and advised him not to sign any paper and not to make any admissions. Officer Cohoon told the defendant he would like for him to sign the confession and that he need not follow the advice of the attorney. The defendant disregarded the advice of counsel, kept the promise previously made when he was unrepresented, and signed the confession.

The officers immediately obtained warrants charging the offenses of burglary and murder. The court committed the defendant to Cherry Hospital for psychiatric evaluation. After sixty-three days the prisoner was returned to the Hillsborough jail with the finding that he knew right from wrong and was competent to stand trial.

On the day of his return, December 2, 1971, Officer Cohoon and others who had conducted the original interrogation, appeared at the jail, had Mr. Noell called, and obtained from the defendant oral admissions in substance the same as those made on September 24-25, 1971.

At the first trial, the State offered over objection, the defendant's admissions made in Chapel Hill and Hillsborough on September 24-25, 1971. The jury returned verdicts finding the defendant guilty of burglary in the first degree and guilty of murder "as charged." The jury having failed to make any

recommendation as to punishment, the court imposed a death sentence in each case.

On appeal, this Court awarded a new trial on account of the erroneous admission of the defendant's confession made on September 25, 1971. *State v. Edwards,* 282 N.C. 201, 192 S.E. 2d 304.

At the new trial now under review, the State introduced evidence in substance the same as that offered in the first trial, except the State did not undertake to offer the confession made on September 25, 1971. The State, however, after a voir dire hearing and over objection, offered the confession made to Officer Cohoon on December 2, 1971. Judge Webb concluded that the lapse of time between September 25th and December 2nd and the defendant's stay in the hospital were sufficient to remove the taint which vitiated the September confession and rendered the December repeat admissible. Over objection, Officer Cohoon was permitted to tell the jury what the defendant had said on December 2nd. The defendant excepted.

On the burglary indictment the jury returned a verdict finding the defendant guilty of "felonious breaking and entering;" on the murder indictment the jury's verdict was "guilty as charged."

The court imposed a prison sentence of ten years for breaking and entering and a life sentence for murder. The defendant excepted and appealed.

*Robert Morgan, Attorney General, by Ralph Moody, Special Counsel, for the State.*

*F. Lloyd Noell and Robert L. Satterfield for the defendant.*

HIGGINS, Justice.

The critical question of law presented on this appeal is the legal admissibility of the defendant's oral confession made to Officer Cohoon in the courthouse in Hillsborough on December 2, 1971. The State contends the court was correct in holding that "[T]he two months and some few days which the defendant was away from Orange County and in Cherry Hospital had washed out the effects of the first two confessions [at Chapel Hill and at Hillsborough] and that the last confession the defendant made [December 2, 1971] was voluntary and proper." The argument

is the defendant was away from the investigating officers and their influence over him had dissipated.

The State's argument would have more weight if different officers had conducted the December 2nd interrogation. But the same officers who obtained the midnight confession in Chapel Hill and a verification in the presence of Mr. Noell in Hillsborough, again confronted him on the first day of his return. Even a retarded eighteen year old had mind enough to know Mr. Cohoon still had his written confession. It seems fair to assume from the officers' rush to get another confession that the prosecution had misgivings about the validity of those previously made. Otherwise, there would be no necessity for an oral confession since the officers already had a written one. Actually, the December interrogation and its results were but a continuation of the State's investigatory procedures which took place before the first trial. The officers neither surrendered the written confession, nor informed the defendant that it would not be used against him. The foregoing, or something like it, seems to be necessary in order to remove the taint from the results of any follow-up interrogation.

The vice in this December 2nd confession is the utter failure of the officers to disclose to this "middle degree" retarded defendant that his prior written confession was illegally obtained, could not be offered in evidence, and that they were endeavoring to obtain additional admissions which could be used against him in court. Judge Webb concluded that the time interval of sixty-three days away from Orange County was sufficient to remove the illegality which tainted the results of the prior interrogations.

In *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492, this Court held: "Where a confession has been obtained under circumstances rendering it involuntary, presumption arises which imputes the same prior influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence." To the same effect are a number of cases. *State v. Stevenson*, 212 N.C. 648, 194 S.E. 81; *State v. Moore*, 210 N.C. 686, 188 S.E. 421.

In *State v. Hamer*, 240 N.C. 85, 81 S.E. 2d 193, Justice Ervin used this language: "Where a confession has been obtained under circumstances rendering it involuntary, any subsequent confession is presumed to proceed from the same

vitiating influence, and the burden is on the State to establish the voluntary character of the subsequent confession before it can be received in evidence."

In *State v. Gibson,* 216 N.C. 535, 5 S.E. 2d 717, Chief Justice Stacy stated the rule: "It is established by numerous decisions that where a confession has been obtained under such circumstances or by such methods as to render it involuntary, a presumption arises which imputes the same prior influence to any subsequent confession of the same or similar facts, and this presumption must be overcome before the subsequent confession can be received in evidence. . . . Especially is this so, when the court is then cognizant of the fact that the accused has made a prior involuntary confession."

2 Wharton, Criminal Evidence, 63, Sec. 359 (12th Ed. 1955), states the rule: "It has also been held, generally, that the influence of the improper inducement is removed when the accused is properly cautioned before the subsequent confession. The warning so given, however, should be explicit and it ought to be full enough to apprise the accused (1) that anything he may say after such warning can be used against him; and (2) that his previous confession, made under improper inducement, cannot be used against him." Citing many cases including: *State v. Gregory,* 50 N.C. 315; *State v. Scates,* 50 N.C. 420; *People v. Jones,* 24 Cal. 2d 601, 150 P. 2d 801; *Williams v. U. S.,* 328 Fed. 2d 669 (5th Cir. 1964).

The presumption of continuing taint is not conclusive, but the admissibility of the later confession must be established by evidence. In this connection, the language of the Court in *Williams v. U. S., supra,* is pertinent: "[T]he most important fact touching on the validity of the oral admissions made after the men had been returned to Fort Worth, was their knowledge that they had already signed a written confession in full, and their lack of knowledge that this confession could not be used against them. . . . We have no doubt that under the circumstances here present there was a burden on the government, before the acceptance of further oral admission or confession from the accused, to inform them that the original written confessions would not be offered or used against them."

The defendant in this case made the oral confession to the officers who had taken the prior invalid written one and the record does not contain a suggestion that the defendant was

advised that the written confession was invalid or that it could not be used against him. The officers evidently suspected the invalidity, otherwise there would appear to be no need for further questioning.

Under the circumstances disclosed by this record, we are forced to conclude that the evidence before Judge Webb was insufficient to warrant the admission of the December 2, 1971 confession. Its admission constituted prejudicial error entitling the defendant to go before another jury.

The Court has heretofore held invalid the written confession signed in Hillsborough on September 25, 1971, and now invalidates the oral repeat made to the same officers on December 2, 1971.

The exclusion of these confessions may present a problem to the prosecution. The admission of incompetent evidence, however, is not the proper solution of the problem.

New trial.