STATE OF NORTH CAROLINA v. ALBERT EUGENE DODD

No. 490A90

(Filed 27 January 1992)

1. **Constitutional Law § 318 (NCI4th)— murder—lack of meaningful argument for appeal—submission for review**

    Defense counsel fully complied with *Anders v. California*, 386 U.S. 738, where she stated that, after a thorough review of the record and the relevant law and further consultation with fellow counsel, she was unable to identify any issue with sufficient merit to support a meaningful argument for relief on appeal; defense counsel submitted a brief in which she discussed three possible assignments of error "that might arguably support the appeal" and requested the Supreme Court to conduct a thorough examination of the record; and defense counsel submitted a copy of her brief to defendant, with copies of the transcript and record and a letter notifying defendant of his right to submit a brief to the Supreme Court on his own behalf.

    **Am Jur 2d, Criminal Law §§ 751, 809, 875, 985.**

    **Supreme Court's views as to accused's federal constitutional right to counsel on appeal. 102 L. Ed. 2d 1049.**

    **Adequacy of defense counsel's representation of criminal client regarding appellate and postconviction remedies. 15 ALR4th 582.**

2. **Evidence and Witnesses § 194 (NCI4th)— murder—condition of third party at scene—no plain error**

    There was no plain error in a murder prosecution in the admission of testimony that Cunningham, whom defendant claimed to be the actual perpetrator, had previously been shot in the leg and was in a cast. Although defendant contended that the witness lacked personal knowledge regarding whether Cunningham was in a cast on the day the victim was shot, the witness did not testify to Cunningham's physical condition on the day of the crime, and her knowledge of his physical condition shortly before and after the crime was sufficiently

**STATE v. DODD**

[330 N.C. 747 (1992)]

probative of his condition on the day of the crime to satisfy the standards of relevance. N.C.G.S. § 8C-1, Rule 401.

**Am Jur 2d, Evidence § 241.**

**3. Criminal Law § 685 (NCI4th) — murder — requested instruction on identification — substantially similar instruction given**

There was no plain error in a murder prosecution where defendant requested an instruction regarding the identification of defendant and the court adequately explained to the jury the various factors they should consider in evaluating witness testimony and clearly emphasized the importance of proper identification and that the burden rested with the State to prove such identity beyond a reasonable doubt.

**Am Jur 2d, Homicide § 487; Trial § 1098.**

**4. Criminal Law § 468 (NCI4th) — murder — prosecutor's argument — flight as evidence of deliberation — not grossly improper**

Although the prosecutor in a murder prosecution improperly referred to defendant's flight with regard to deliberation, no objection was made at trial and the misstatement of the law was not so grossly improper or prejudicial as to require the court to intervene *ex mero motu*. Given the evidence, it was highly unlikely that the State's improper characterization of the law with respect to flight and deliberation affected the jury's decision. Any error was cured by the court's proper instruction on the law, the court's prefatory remarks directing jurors to apply the law as given to them by the court, and the State's urging of the jurors to keep the judge's instructions in mind.

**Am Jur 2d, Evidence § 228; Homicide §§ 501, 507; Trial §§ 554, 555, 566, 711.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Warren, J.*, at the 16 July 1990 Criminal Session of Superior Court, MECKLENBURG County. Calendared for argument in the Supreme Court 12 December 1991; determined on the briefs without oral argument pursuant to N.C. R. App. P. 30(d) upon motion of the parties.

STATE v. DODD

[330 N.C. 747 (1992)]

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant, Albert Eugene Dodd, was indicted by the Mecklenburg County Grand Jury on 5 February 1990 for the murder of Charles Henri Arms. The case was tried noncapitally at the 16 July 1990 Criminal Session of Superior Court, Mecklenburg County.

The evidence at trial tended to show that on 14 January 1990, Charles Henri Arms died as a result of a gunshot wound to the upper chest sustained that afternoon. According to eyewitnesses, on the afternoon of 14 January, defendant hired a cab to take him to the Southland Supermarket on Thirteenth Street in Charlotte. There, defendant walked toward a group of young men who stood outside the store, one of whom was the victim. As defendant approached, he nodded his head as though he was speaking to the group. When several feet away, he turned around as if to walk to the store, then turned around again and started shooting, hitting the victim, Charles Arms. Defendant fired three to five shots from two revolvers, a .38- and a .357-caliber. The victim was first struck in the foot; a later bullet entered the upper left back and struck both lungs and the aorta. This latter wound proved fatal and was determined to have been caused by a large-caliber weapon, such as a 9 millimeter, a .357, a .38, or a .45. Eyewitnesses at the murder scene identified defendant as the perpetrator.

Evidence for the defendant showed that Patricia Robinson resided in an apartment located directly behind the Southland Supermarket. Ms. Robinson was familiar with both defendant and the victim. On the afternoon of 14 January, Ms. Robinson testified that she heard neighbors yelling that some people were in the parking lot in a blue Ford. She went to her door and observed a group of males, one of whom carried a gun, enter the vehicle and depart. After reentering her apartment, Ms. Robinson heard three or four gunshots and ran outside to see what had happened. She went outside and discovered the victim lying on the sidewalk and observed Antonio Cunningham, in the possession of a gun, run to the blue vehicle and quickly drive away.

Officer Paula S. Forest of the Charlotte Police Department spoke to Robinson at the scene. Robinson informed Officer Forest that she saw Antonio Cunningham and another black male run up to the victim and shoot him. Forest searched an area she knew to be frequented by Cunningham and located a vehicle matching the description provided by Robinson.

On cross-examination by the State, Officer Forest testified that Antonio Cunningham had been shot in the leg two weeks prior to the 14 January incident and was still wearing a cast the last time she saw him, approximately a week after the shooting of the victim. On redirect by defense counsel, Forest stated that, although she had seen Cunningham "a couple of hundred" times, she did not know whether he was wearing a cast on 14 January. The first time she had seen Cunningham in a cast was the week following the shooting of Arms.

Following presentation of the evidence, the jury found defendant guilty of first-degree murder, and he was sentenced to the mandatory term of life imprisonment. Defendant appeals as of right from that sentence.

[1] Upon defendant's application of indigency, the Appellate Defender was assigned to represent defendant on his appeal to this Court. In her brief filed with this Court, defendant's appellate counsel stated that after a thorough review of the record and the relevant law and further consultation with fellow counsel, she was unable to identify any issue with sufficient merit to support a meaningful argument for relief on appeal. In accordance with *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), defense counsel submitted a brief in which she discussed three possible assignments of error "that might arguably support the appeal," *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498, and requested this Court to conduct a thorough examination of the record. Defense counsel submitted a copy of her brief to defendant, with copies of the transcript and record and a letter notifying defendant of his right to submit a brief to this Court on his own behalf in accord with *Anders*. Defendant failed to submit any brief. We conclude that defense counsel fully complied with *Anders*.

[2] The first of the three possible assignments suggested is that the trial court committed plain error when it permitted the State to introduce the testimony of Officer Forest. Specifically, defendant

STATE v. DODD

[330 N.C. 747 (1992)]

asserts that the court erred by permitting the State to cross-examine Forest concerning the fact that Antonio Cunningham had been shot in the leg two weeks prior to the victim's death and as a result of the wound was wearing a cast at the time of the victim's death. The transcript reveals the following cross-examination of Officer Forest by the prosecutor:

Q. Do you remember anything unusual about Antonio Cunningham's legs in January of 1990?

A. Yes, I do.

[DEFENSE COUNSEL]: Object to the relevance, Your Honor.

[PROSECUTOR]: Identification, Judge.

THE COURT: Objection overruled.

Q. Explain to the jury.

A. Yes. He was shot two weeks prior to this shooting in the leg, and was wearing a cast the last time I saw him. I didn't see him the day of this shooting.

Q. Did you see him shortly after the shooting?

A. Yes, I did.

Q. And how was his leg then?

A. It was still in a cast.

Defendant argues that admission of this testimony violated N.C. R. Evid. 602 because Forest lacked personal knowledge regarding whether Cunningham was in a cast on the day the victim was shot. Defendant also maintains that this testimony was prejudicial because his sole theory of defense was that Cunningham killed the victim. We disagree.

The essence of Forest's testimony was that she was aware that Cunningham was in a cast two weeks before and one week after the shooting. Officer Forest did not testify to Cunningham's physical condition on the day of the crime; therefore, defendant's objection is without merit. Moreover, Forest's knowledge of Cunningham's physical condition shortly before and after the crime was sufficiently probative of Cunningham's condition on the day of the crime to satisfy the standards of relevance. N.C.G.S. § 8C-1,

Rule 401 (1988); *see State v. Cheek*, 307 N.C. 552, 562, 299 S.E.2d 633, 639-40 (1983).

**[3]** The second suggested assignment of error is that the trial court erred by refusing to include in its jury charge defendant's requested instruction regarding the identification of defendant as the perpetrator of the killing. The requested instruction emphasized at length the jury's need to examine the testimony of the witnesses to assess whether they had the opportunity to observe the alleged crime, their ability to identify the perpetrator given the length of time they had to observe, their mental and physical conditions, and the lighting and other conditions that might have affected their observation. The requested instruction also emphasized that the identification of the defendant as the perpetrator had to be purely the product of the witnesses' recollection of the crime and that the jury could properly discount a witness' identification if the circumstances regarding any subsequent confrontation might have influenced the purported identification. Rather than giving the requested instruction, the trial court instructed the jury:

> You are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of what a witness has said on the stand. In determining whether to believe any witness, you should apply the same tests of truthfulness which you apply in your everyday affairs. As applied to this trial, these tests may include the opportunity of the witness to see, to hear, know or remember the facts or occurrences about which he or she testified, the manner and appearance of the witness, any interest, bias or prejudice the witness may have, the apparent understanding and fairness of the witness, whether his or her testimony was reasonable, and whether his or her testimony is consistent with other believable evidence in this case.

> You are the sole judges of the weight to be given to any evidence. By this I mean, if you decide that certain evidence is believable, you must then determine the importance of the evidence in light of all other believable evidence in this case.

The court then provided the pattern jury instruction on identification:

> I instruct you that the State has the burden of proving the identity of the defendant as the perpetrator of the crime

STATE v. DODD

[330 N.C. 747 (1992)]

charged beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crime charged before you may return a verdict of guilty.

When a defendant makes a timely written request for an instruction that is correct in law and supported by the evidence, as was the case here, the trial court must relate the substance of that instruction, although it is not required to give the instruction verbatim. *State v. Green*, 305 N.C. 463, 476-77, 290 S.E.2d 625, 633 (1982). The defendant in *Green* requested instructions regarding identification that were substantially similar to those proffered by the defendant in this case. However, the trial court refused the special instruction and instructed the jury using an instruction virtually identical to that provided by the court here. In *Green*, we concluded that the instruction given "adequately conveyed the substance of defendant's proper request; no further instructions were necessary." *Id.* at 477, 290 S.E.2d at 633. As in *Green*, we conclude that the trial court did not err because the instruction given was substantially similar to that requested. The charge adequately explained to the jury the various factors they should consider in evaluating witness testimony. Moreover, the instruction clearly emphasized the importance of proper identification and emphasized that the burden rested with the State to prove such identity beyond a reasonable doubt. Therefore, we overrule this assignment of error.

[4] The third and final suggested assignment of error is that the trial court improperly failed to intervene or correct the prosecutor's improper assertion in her argument to the jury that defendant's flight from the crime scene was evidence of deliberation. In her closing, the prosecutor argued, among other things:

The State is also required to show deliberation, and that, again, is something that cannot be proven generally directly. It needs to be shown by the circumstances. That, again, refers to the idea of the lack or [sic] provocation and the conduct of the defendant before, during and after the killing— deliberation. There was no provocation in this case. The victim did nothing to require [defendant] to shoot him in the back. And we'd remind you that after that shooting the defendant fled, and we would submit that that again shows to you there was deliberation.

His honor will also give you some further instructions, but we would ask you to keep those instructions in mind as you listen to the final arguments of counsel.

While correctly noting that the above reference to defendant's flight with regard to deliberation was improper as a matter of law, *see, e.g., State v. Bolin*, 281 N.C. 415, 425, 189 S.E.2d 235, 242 (1972), defendant concedes that no objection was made at trial to this misstatement of the law. Therefore, the proper standard of review is whether the comment of the prosecutor was so prejudicial and grossly improper as to require the court to intervene *ex mero motu* to correct the abuse. *State v. James*, 322 N.C. 320, 324, 367 S.E.2d 669, 672 (1988). We conclude that it was not.

In the instant case, there were three eyewitnesses to the murder. Maxwell Ogwo, the cab driver who drove defendant to the murder scene, testified that after exiting the cab defendant approached a group of four or five young men standing in front of the store. As Ogwo reversed the car to drive away, he saw defendant walk side-by-side with one of the young men, take a few steps back, pull a gun from his torso area, and fire four shots. Two other eyewitnesses, Willie Springs and Edward Carraway, were standing with the victim in front of the store when defendant exited the cab and walked toward them. Mr. Springs testified that defendant "nodded his head like he was speaking to us, and then he got several feet towards us, and then when he turned around—he turned back around like he was walking towards the store, and when he turned back around he started shooting." Mr. Carraway testified that defendant

nodded his head to Willie Springs, and he came towards us and had two revolvers in his pants.

Q. What kind of guns did he appear to have?

A. He had a .38 and a .357 tucked down in his pants, and he went about three steps away from us and he pulled one of the revolvers out of his pants and started shooting.

The above testimony clearly tended to show that defendant deliberated the killing of Charles Arms. *State v. Myers*, 299 N.C. 671, 677-79, 263 S.E.2d 768, 772-73 (1980). Given this evidence, it is highly unlikely that the State's improper characterization of the law with respect to flight and deliberation affected the jury's decision in this case. Therefore, the misstatement of the law was not

so grossly improper or prejudicial as to require the court to intervene *ex mero motu.* Furthermore, while the court did not instruct on flight, any erroneous statement of the law in the prosecutor's closing argument regarding flight was cured by the court's proper instruction to the jury on the law pertinent to the case. This proper instruction was reinforced by the judge's prefatory remarks to the jurors directing them to apply the law as given to them by the court and the State's *own* urging of the jurors to "keep [the judge's] instructions in mind." Under the circumstances, we cannot say that the misstatement of law contained in the argument of the prosecutor was so grossly improper as to have required the trial court to intervene *ex mero motu. State v. Harris*, 290 N.C. 681, 695-96, 228 S.E.2d 437, 445-46 (1976); *State v. Braswell*, 67 N.C. App. 609, 614, 313 S.E.2d 216, 219-20 (1984).

Defense counsel also suggested, but did not brief, eleven other possible assignments of error. We have reviewed these and conclude that these assignments do not merit relief. Further, we have conducted a thorough review of the transcript of the proceedings and the record on appeal. We find no error warranting reversal of defendant's conviction or modification of his sentence.

No error.